No. 23126.

RICHARD CLYDE HAMPTON *v*. THE PEOPLE OF THE STATE OF COLORADO.
(465 P.2d 394)

Decided February 16, 1970.     Rehearing denied April 6, 1970.

Edward H. Sherman, Public Defender, Truman E. Coles, Deputy, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Robert C. Miller, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Hodges delivered the opinion of the Court.

The plaintiff in error, Richard Clyde Hampton, will be referred to herein as the defendant. He was charged with killing and murdering one Bobbie Jean McDade feloniously, wilfully and with premeditated malice aforethought. At the trial, evidence was adduced to show the victim had been shot four times: twice in the head; once in the leg; and once in the hand. It was also shown she had had sexual intercourse before her death. The crime took place in her apartment at approximately 3:30 A.M.

The death penalty was withdrawn from the consideration of the jury at the close of the evidence, undoubtedly because of the provisions of C.R.S. 1963, 40-2-3(3) which prohibits that penalty where a conviction is based entirely on circumstantial evidence. The defendant was found guilty by the jury of the lesser included offense of murder in the second degree and was sentenced to a term of not less than 25 nor more than 40 years in the state penitentiary.

As the voir dire of the jury panel began, the district attorney asked generally whether anyone had any moral, conscientious or religious objections to imposition of the death penalty. The district attorney attempted to challenge those veniremen who answered affirmatively but an objection by the defendant was sustained. Thereafter,

during the voir dire, the district attorney asked each individual venireman whether he had any moral, conscientious or religious objection to imposition of the death penalty. Those who answered yes were questioned further and asked whether their objection was of long standing or an abiding one. Those who again answered yes were questioned further and their answers fell into one of the following categories: they felt they could not consider or impose the death penalty in any circumstances; or they felt they could not be objective; or they felt their ability or deliberation might be impaired; or they felt they could not follow the instructions of the court if the case involved the possibility of capital punishment. Those veniremen were again challenged and excused for cause.

■ Several assignments of error pertain to the conduct of the voir dire of the jury panel. Others relate to the conduct of trial during the presentation of the evidence, and to the introduction of several exhibits. Only those claims of error deemed materially significant are discussed. Our review of this extensive trial record reveals no reversible error. The defendant receivd a fair trial and the verdict of the jury is fully supported by the evidence. We therefore affirm the trial court's judgment.

I.

■ The defendant first contends that he was denied a fair trial by permitting the district attorney to qualify the jury panel for the death penalty, when at the time, the People knew they had no direct evidence of the alleged homicide and that the case against him consisted entirely of circumstantial evidence.

We think the case of *Atencio v. People,* 147 Colo. 566, 364 P.2d 575, a case strikingly similar to the instant case, is controlling and fully answers this contention. We therein stated:

"It is true the district attorney, in examining his case prior to presentation in the trial court, might well have concluded that he did not have direct evidence sufficient

to warrant the death penalty. However, the charge was first degree murder and it was conceivable that such would be the verdict of the jury .... At the time these questions were asked no one could tell exactly what the evidence would show. See State v. Milosovich, 42 Nev. 263, 175 Pac. 139. The charge here grew out of the death of a young girl by violent means under sordid circumstances. Had the defendant's guilt been proved by direct evidence, the district attorney would have been guilty of neglect had he not sought the death penalty. Considering the unpredictability of trials and the circumstances surrounding this case, the district attorney did not act improperly in qualifying the jury to return the death penalty. Under such circumstances the district attorney should be given considerable latitude in the scope of his voir dire of the jury. The court committed no error on this point."

## II.

The defendant next claims the court committed reversible error by permitting the district attorney to ask the veniremen on individual voir dire whether they had any moral, conscientious or religious objection to imposition of the death penalty because the question injected a religious issue and other extraneous matters into the case; it also denied him a jury which represented a cross section of the community thus assuring the prosecution of a jury more prone to convict.

In our view, the question did not inject a religious issue or deny defendant a fair trial. In *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, a case where 47 veniremen were excused for cause after apparently very little questioning on their beliefs concerning capital punishment, the United States Supreme Court stated: "... Specifically, we hold that a *sentence of death cannot be carried out* if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced generally objections to the death

penalty or expressed conscientious or religious scruples against its infliction. . . ." (Emphasis added.)

The court further stated that the only thing invalid where veniremen were improperly challenged was the sentence and that a *jury so selected could decide the issue of guilt.* Even if we were of the opinion that the seven veniremen were improperly excluded — and we are not of that opinion — the verdict would still stand. See also *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, an appeal which also involved selection of a jury from which all prospective jurors who stated their opposition to capital punishment had been excluded.

Nor can we conclude, as a matter of law, that the jury selected here was more prone to convict than to acquit. As stated in *Witherspoon, supra:*

". . . We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction." The defendant cites no authority, studies, or other data to support his contention, which is the same contention proposed and rejected by the court in *Witherspoon.*

III.

■ The defendant also alleges the court erred when it excused the seven veniremen without a showing first having been made that they would not follow the instructions of the court by considering both life imprisonment and death upon finding him guilty of first degree murder. We disagree.

Under both *Witherspoon* and *Bumper,* the veniremen were properly excused when each of them indicated at least one of the following: that he felt he could not consider or impose the death penalty in any circumstances; that he felt he could not be objective; that he felt his ability to deliberate might be impaired; or that he felt he could not follow the instructions of the court if the case involved the possibility of capital punishment.

## IV.

██ Defendant next complains that he was denied a fair trial by testimony that certain items of clothing of the defendant introduced into evidence were stained by human blood. He argues that absent a showing that the stains were from either the victim or defendant, the evidence was not relevant or material and its introduction was prejudicial.

The defendant cites no authority for his proposition and we know of none. As noted in *Washington v. People*, 158 Colo. 115, 405 P.2d 735, *cert. denied*, 383 U.S. 953, 86 S.Ct. 1217, 16 L.Ed.2d 215, in order to establish the relevancy and materiality of real evidence, it must only be connected in some manner with the perpetrator, the victim, or the crime. To be admitted, it must be shown to be what it purports to be in relation to the crime charged.

In this connection, see *Militello v. People,* 95 Colo. 519, 37 P.2d 527, wherein we held:

". . . The attacks upon much of this evidence, including the contention that it should have been stricken on defendant's motion, are based upon the theory that isolated statements do not prove definite facts. This is seldom possible and never essential. A case of circumstantial evidence can rarely be so constructed. Its very nature implies the weaving of a fabric of known facts, which, often, infinitesimal or immaterial, or even prejudicial when considered alone, become important only as they are tied to others, and when so tied lead to inevitable conclusions as to facts in issue. . . ."

See also *Corbett v. People,* 153 Colo. 457, 387 P.2d 409, *cert. denied,* 377 U.S. 939, 84 S.Ct. 1346, 12 L.Ed.2d 302.

Standing alone, the evidence of the blood stains found on defendant's clothing may not have been sufficient to sustain the finding of defendant's guilt, but when considered together with all the other evidence of a violent death and all justifiable inferences which can be drawn therefrom, the evidence was relevant, material, probative and properly admitted.

## V.

■■ The defendant claims the court erred in denying him an opportunity to examine two prospective witnesses regarding a conversation they had with a third witness in the corridor outside the courtroom after the exclusionary rule had been invoked. The court permitted counsel to question the third witness who participated in the conversation. After the witness testified that the conversation concerned his vacation and in no way involved any testimony to be given at trial, the court denied counsel's request to question the other two.

Whether the exclusion is initially invoked, and if invoked, what constitutes a violation thereof, and even if it be determined that there was a violation, what penalty should be imposed or whether the offending witness should be allowed to testify, are all matters resting within the sound discretion of the court. *Cruz v. People,* 149 Colo. 187, 368 P.2d 774; *Gomez v. People,* 155 Colo. 507, 395 P.2d 462. The defendant has presented nothing to this court to show that the trial court abused its discretion and we can find no error in this ruling by the trial court.

## VI.

■ Defendant says he was denied a fair trial by the prosecution's failure to produce two F.B.I. witnesses to testify in aid of a written F.B.I. report. He argues the agents' testimony would have tended. to establish his innocence. The testimony would have been of the negative type, *e.g.*, that glass from a broken window in the victim's residence did not match glass found in defendant's shoe and other testimony in this same vein. Defense counsel was allowed to read to the jury the results of the F.B.I. report, which results the agents would have testified to had they been called.

A prosecuting attorney is not obliged to call any particular witness, but may try his case in his own way and at his discretion call those witnesses he chooses. *Ware v. People,* 76 Colo. 38, 230 P. 123.

Defendant had compulsory process to compel atten-

dance of witnesses for his defense and was represented by able and competent counsel whom he had retained. He was on an equal basis with the People in preparing and producing evidence. *Willis v. People,* 73 Colo. 369, 215 P.854. We find no merit in defendant's contention that the prosecution should have called the agents so as to allow him to cross-examine them.

## VII.

Defendant also contends that under Article II, Section 16 of the Colorado constitution and the sixth amendment to the United States Constitution, his right to a public trial was violated by the court's conducting a portion of his trial on a Saturday when all but one entrance to the Denver City and County Building was closed.

The term "public trial" contemplated by the Constitution is a trial which is not secret (*Benedict v. People,* 23 Colo. 126, 129, 46 P. 637; *People v. Swafford,* 65 Cal. 223, 3 P. 809), one that the public is free to attend (*Davis v. United States,* 247 F. 394). To a great extent, it is a relative term and its meaning depends largely on the circumstances of each particular case. *People v. Cash,* 52 Cal. 2d 841, 345 P.2d 462. As was noted in *Swafford, supra,* at 810:

". . . the requirement is fairly observed, if, without partiality or favoritism, a reasonable portion of the public is suffered to attend. . . ."

See also *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682.

Absent some showing on the part of the defendant, beyond one that the trial was held on Saturday when only one building door was open, we cannot assume the trial was not public.

## VIII.

The defendant next contends he was denied a fair trial and the court erred prejudicially when it submitted the case to the jury on the theory of first degree murder when not a scintilla of evidence existed showing "express

malice," "premeditation" or "wilfulness," all of which are material elements of the crime.

"Express malice is that deliberate intention unlawfully to take away the life of a fellow creature which is manifested by external circumstances capable of proof." C.R.S. 1963, 40-2-2.

Express malice exists when there is a deliberate and formed design to take a human life (*People v. Spinuzzi*, 149 Colo. 391, 396, 369 P.2d 427) and is a question of fact to be determined by the jury on all the evidence in the case (*Kent v. People*, 8 Colo. 563, 9 P. 852). Malice, premeditation and deliberation may also be inferred from the use of a deadly weapon. *Power v. People*, 17 Colo. 178, 28 P. 1121.

In the instant case, the victim died in the early morning hours as the result of gunshot wounds. Powder marks on her body indicated she had been shot at close range. Under those circumstances, we believe the court was correct in submitting the question of first degree murder to the jury. The question itself would appear to be moot as the jury found the defendant guilty of second degree murder and, in effect, therefore found him not guilty of first degree murder.

## IX.

The defendant further contends the trial court *sua sponte* should have instructed the jury on voluntary manslaughter. Manslaughter, to be voluntary, must be "... upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible ..." (C.R.S. 1963, 40-2-4) and "... there must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing." C.R.S. 1963, 40-2-5.

The record is absolutely devoid of any evidence which would have supported a verdict of guilty of voluntary manslaughter. Under the circumstances and the evi-

dence, the court was not obliged to instruct thereon, and, especially so, where no such instruction was tendered. *Berger v. People,* 122 Colo. 367, 224 P.2d 228, *cert. denied,* 342 U.S. 837, 72 S.Ct. 62, 96 L.Ed. 633.

X.

Defendant also asserts he was denied a fair trial by the court's acceptance of two witnesses as experts in their respective fields. The People attempted to qualify Officer Taylor as an expert in the field of fingerprinting and when asked whether he had any objection to Officer Taylor's being accepted as an expert, counsel answered no. Defendant now contends Officer Taylor's testimony was inherently incompetent and should have been stricken upon the court's own motion.

Defendant also contends the court abused its discretion in permitting Officer Gordon to testify as a ballistics and firearms expert. We do not agree. The evidence is not so insufficient as a matter of law to require us to conclude that this testimony should not have been permitted. It is also a matter within the discretion of the trial court to determine if the witness is to be allowed to testify as an expert and that determination will not be disturbed by this court on review where there is no showing of abuse of discretion. We can find no abuse of discretion here. The weight to be accorded expert testimony is a question solely for the jury. Such testimony is subject to the test of cross-examination as any other testimony and the jurors are not bound by it and may accept or reject it as they see fit. *Rosenthal v. Citizens State Bank of Cortez,* 129 Colo. 35, 266 P.2d 767; *Moseley v. Lamirato,* 149 Colo. 440, 370 P.2d 450; *Scott v. People,* 166 Colo. 432, 444 P.2d 388.

XI.

Defendant lastly complains the court erred prejudicially by admitting People's Exhibits E, M and T, three photographs of the crime. Exhibit M was a photograph of the deceased as she appeared at the scene of the crime and Exhibit E was a photograph of the undersurface of

the chin of the victim showing the wound there. Exhibit T was a photograph of marks left in the dirt on a basement windowsill, apparently through which entry was gained to the victim's apartment.

The victim's mother testified she saw "Clyde," who she identified as the defendant, run from her daughter's apartment shortly before she found her stricken daughter. She also testified he was wearing a corduroy coat similar to the one found in his home and introduced into evidence. An F.B.I. agent testified as to Exhibit T that the marks left in the dirt on the windowsill were similar to the ribbing of the corduroy coat found at the defendant's home. Also, the coat was identified by the victim's mother as being similar to the one she saw "Clyde" wearing when he ran from the victim's apartment.

Photographs are admissible in evidence if they depict facts which are relevant, and they are not rendered inadmissible because they reveal shocking details of the crime. *Hinton v. People,* 169 Colo. 545, 458 P.2d 611. Also, photographs which depict the crime scene as it was allegedly created by the defendant, are properly admissible. See *Monge v. People,* 158 Colo. 224, 406 P.2d 674 and cases cited. therein, Moreover, photographs of anything a witness can describe in words are competent evidence. *Landford v. People,* 159 Colo. 36, 409 P.2d 829. Under those rules, the above exhibits were properly admitted into evidence. Even if Exhibit M is considered cumulative, we can find no abuse of discretion in its admission so as to require a reversal. *Silva v. People,* 158 Colo. 326, 407 P.2d 38; *Potts v. People,* 114 Colo. 253, 158 P.2d 739.

Judgment affirmed.

MR. JUSTICE PRINGLE not participating.