## No. 25098

### The People of the State of Colorado v.
### Henry Albert Jones
(518 P.2d 819)

Decided January 28, 1974.     Rehearing denied February 19, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, David A. Sorenson, Assistant, for plaintiff-appellee.

Robert W. Caddes, for defendant-appellant.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The defendant was found guilty of murder, aggravated robbery and conspiracy to commit aggravated robbery. We affirm.

### TESTIMONY PRESENTED BY THE PEOPLE

Some of the testimony presented by the People was to the following effect: About a week prior to November 20, 1969, the defendant Jones, Mike Goggin, Ronald Stichter and Teresa Gale formulated a plan to rob one or more homosexuals at Cheesman Park in Denver. About two days later, the defendant, Jackie Jones (defendant's younger brother), Mike Goggin and Ron Stichter went to Cheesman Park and attempted to carry out their plan. The defendant transported the group in his automobile, Ron and Jackie got out of the car and someone "picked them up" in Cheesman Park. The two boys "chickened out," however, and this robbery was never accomplished.

Approximately two days prior to November 20, 1969, the defendant and Mike discussed going to Cheesman Park to rob a homosexual. Jackie and Ron were present during this conversation.

On November 20, 1969, the defendant drove Teresa to her home where the defendant picked up a .22 caliber pistol owned by Teresa's father. At 6:00 or 7:00 p.m. that day the defendant drove his car to Cheesman Park, accompanied by Mike, Ron, Teresa and Jean Tippets. It was understood that the males were going to "pick up a queer and roll him." Teresa and Jean went along as "bait" for girls whom they intended to entice to a prearranged place known as the "haunted house," an arsenal in Adams County. The gun was lying on the front seat of the automobile as they drove to Cheesman Park.

When the group arrived at the park, the defendant and Mike told Ron to get out and rob someone. Mike and Ron got out of the car with the prearranged agreement that, if they picked up anyone, the group would meet them at the "haunted house." Mike and Ron became separated, and Ron rejoined those in the automobile. The group drove around Cheesman Park looking for Mike and then went to the "haunted house."

Mike had been at the "haunted house," and he stated that he had shot and killed a man. He pointed to a parked car and stated that it belonged to the deceased and that the body of the deceased was in the car. The following evening the authorities found the body in this car.

THE DEFENDANT'S STATEMENT AND TESTIMONY

The defendant was arrested about a week later, and made a written statement which was admitted in evidence. It is not claimed here that there was any error in the admission of the statement. The statement contained the following: That the defendant drove the group to Cheesman Park; that they went to the arsenal to look for Mike and found him there; that Mike said that he had shot someone; that, after he took the others home, he and Mike returned to the arsenal and they moved "somebody" from the car and placed it in the car's trunk; and that he saw some blood.

The defendant's testimony did not differ materially from his written statement, except as to one matter. He testified that whatever was moved from the car into the trunk was wrapped in burlap. He inferred that he did not know that it

was a body, saying, "I couldn't say if there was some — something more than potatoes or anything in that burlap sack or not."

I.

During oral argument the Assistant Attorney General advised us that Mike had been found not guilty of the murder by reason of insanity. We asked for further briefs on the question of whether in such a situation this defendant could be found guilty of murder by reason of being an accessory. Such briefs were submitted. *Roberts v. People,* 103 Colo. 250, 87 P.2d 251 (1938), is dispositive in this matter. It is there said:

"There may be a murder committed in fact and still the state may not be able legally to establish it for the purpose of the imposition of a penalty on the murderer. A verdict of acquittal does not establish a status of innocence . . . . The guilt or innocence of an accessory after the fact depends as to one element on the *factual status* of the principal as to guilt or innocence; *not on his legal status* as regards liability or nonliability to suffer a penalty . . . .

"Since it is guilt in fact and not an antecedent conviction that the state must prove against the accessory then it is guilt in fact when shown by competent evidence that the accessory defendant must controvert. A judgment of conviction and a judgment of acquittal are equally solemn judicial acts. If on the trial of an accessory a judgment of conviction of the principal does not bind the defendant when offered offensively by the state, and we are convinced it does not, then we do not think it binds the state when offered defensively by the defendant . . . .

" 'The conclusion is that a judgment in the principal felon's case whether of conviction or acquittal, is not admissible for any purpose in an action against the accessory.' " (Emphasis added.)

In *Britto v. People,* 178 Colo. 216, 497 P.2d 325 (1972), it was held to be inconsequential whether or not the principal was even charged with a criminal offense. *See Babcock v. Missouri,* Mo., 485 S.W.2d 85 (1972).

■ It must be shown beyond a reasonable doubt that, except for the insanity, the principal (Mike) committed a murder. *Vigil v. People,* 174 Colo. 164, 482 P.2d 983 (1971). The evidence in this case is without conflict that Mike committed the homicide in connection with a robbery.

## II.

■ As a part of the proof of conspiracy, Emily Gonzales testified that about a week prior to November 20th she was with the defendant, Mike, Ron and Jean; that they were talking about riding to Cheesman Park; and that Mike said that they were going to "roll a queer." Later in her testimony she stated that she did not remember whether the defendant was present during this conversation. Defense counsel moved for a mistrial and, after that motion was denied, moved that Emily's testimony be stricken and the jury be instructed to disregard it. This motion also was denied.

Assuming *arguendo* that it was error to overrule the second motion, we hold that it was not prejudicial error. There was an abundance of other testimony to the effect that the defendant was present when the proposed robbery was planned. Emily only reiterated what other witnesses testified. There was substantial evidence to establish defendant's presence during the conspiratorial conversation without her testimony. Her statements, therefore, could not be prejudicial. *See Segura v. People,* 159 Colo. 371, 412 P.2d 227 (1966).

## III.

■ The defendant argues that there was not sufficient evidence to convict him as an accessory to murder. This misses the point that here we have a situation involving the felony-murder rule. If defendant was an accessory to aggravated robbery, it follows that he was guilty of murder. *See Jones v. People,* 146 Colo. 40, 360 P.2d 686 (1961).

## IV.

■ The defendant contends that the evidence was insufficient to convict him as an accessory to aggravated robbery. The statute then in effect provided:

"An accessory is he who stands by and aids, abets or assists,

or who, not being present, aiding, abetting or assisting, has advised and encouraged the perpetration of the crime. He who thus aids, abets or assists, advises or encourages, shall be deemed and considered as principal and punished accordingly." C.R.S. 1963, 40-1-12.

There was ample evidence that he advised and encouraged the perpetration of the robbery; that he provided transportation to Cheesman Park; and that he supplied the weapon.

## V.

■ It is argued that there was insufficient evidence to establish venue in Adams County. The uncontradicted evidence is that the shooting occurred in Adams County. This disposes of the contention so far as the murder and aggravated robbery convictions are concerned.

■ Any error relating to venue of the conspiracy charge was waived. This matter was not mentioned during trial, in the motion for acquittal, or in the motion for a new trial. *Davis v. People,* 83 Colo. 295, 264 P. 658 (1928).

## VI.

■ Officers searched the defendant's car under a warrant which the Attorney General concedes was invalid. There was seized a glove, which apparently was a mate to the glove found near the victim's automobile. Also seized were three spent .22 caliber cartridges. The trial court overruled a motion to suppress. While the motion should have been granted, the error was harmless. The defendant testified that he was at the victim's car and, therefore, the presence of his glove there could not be prejudicial. Mike admittedly shot the victim three times with a .22 caliber pistol. The admission of the spent cartridges in evidence was therefore of little, if any, consequence.

## VII.

■ The defendant claims error from the admission in evidence of the victim's watch, the box in which the watch was purchased, and a box in which the victim's transistor radio was purchased. We agree that those exhibits were probably immaterial and irrelevant but, just as was the case with the exhibits mentioned above, we see no prejudice.

## VIII.

■ Error is predicated upon the admission in evidence of photographs of the victim's body and of the automobiles of the defendant and the victim, as well as an aerial photograph of the crime scene. We find no abuse of discretion or error in the admission of the photographs complained of.

"It is well-established that photographs may be used to graphically portray, among other things, the scene of a crime, the identification of a victim, the appearance and condition of the deceased, and the location, nature and extent of the wounds or injuries, all of which matters are relevant. It has been consistently held that photographs are competent evidence of any relevant matter which it is competent for a witness to describe in words. *Hampton v. People,* 171 Colo. 153, 465 P.2d 394; *Monge v. People,* 158 Colo. 224, 406 P.2d 674; *People v. Spinnuzi,* 149 Colo. 391, 369 P.2d 427. That shocking details of the crime may be revealed by photographs does not render them inadmissible if otherwise relevant. *Hampton, supra; Hinton v. People,* 169 Colo. 545, 458 P.2d 611; *Spinnuzi, supra.* We find no merit in the defendant's argument." *Young v. People,* 175 Colo. 461, 488 P.2d 567 (1971).

"The trial court unquestionably has discretion to determine whether a photographic exhibit is unnecessarily gruesome and inflammatory. Unless an abuse of discretion is shown, the trial court's decision as to admissibility of a photograph will not be disturbed on review." *Hinton v. People,* 169 Colo. 545, 458 P.2d 611 (1969). *See Hampton v. People,* 171 Colo. 153, 465 P.2d 394 (1970).

■ There was introduced in evidence a rather gruesome picture of the upper one-third of the victim's body lying in the morgue. Its admission was objected to at trial on the ground that it was irrelevant and immaterial. No objection was made on the point discussed in *Archina v. People,* 135 Colo. 8, 307 P.2d 1083 (1957) (unnecessary and inflammatory). No question as to the admission of the exhibit has been raised here and, therefore, any error has been waived.

### IX.

We find no merit in the other assignments of error.

Judgment affirmed.

MR. JUSTICE ERICKSON does not participate.