## No. 26974

## The People of the State of Colorado v. Sandra Steele

(563 P.2d 6)

Decided April 18, 1977.                    Rehearing denied May 9, 1977.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, E. Ronald Beeks, Assistant, for plaintiff-appellee.

Gene A. Ciancio, Louis Weltzer, for defendant-appellant.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

The defendant appeals her convictions of first-degree murder[1] and conspiracy to commit first-degree murder.[2] We affirm.

Before the commencement of the trial, the parties stipulated that the victim, Larry Steele, the defendant's estranged husband, died of a bullet wound to the head inflicted by Robert Barr. The theory under which the defendant was charged, tried and convicted was that Barr had murdered Larry Steele at the instigation of the defendant. There was testimony from several different sources to substantiate the prosecution's theory of the case.

John Bryant testified that a month prior to the decedent's death he overheard a conversation between the defendant and Robert Barr in which the two were planning the murder of Larry Steele. At that time, Bryant heard the defendant tell Barr that her husband could be killed at either of two locations. Bryant further testified that on the day of the murder the defendant made several requests of Barr, Bryant and Nanette Hambeck, Bryant's girl friend, to drive to the decedent's residence to determine if he

---

[1] 1971 Perm. Supp., C.R.S. 1963, 40-3-102, now section 18-3-102, C.R.S. 1973 (1976 Supp.).
[2] 1971 Perm. Supp., C.R.S. 1963, 40-2-201, now section 18-2-201, C.R.S. 1973 (1976 Supp.).

was home. Bryant testified that later the same day, after the defendant herself had returned from surveilling the decedent's home, she commented that Larry Steele was "a sitting duck" and again asked Barr to kill Steele. At that time, she asked Bryant to drive Barr to the decedent's residence.

Bryant also testified with regard to two different conversations which Barr had had with the defendant and subsequently related to Bryant. First, Bryant stated that after he had agreed to aid Barr, Barr told him that the defendant had promised Bryant an automobile for his efforts. Moreover, Barr was to receive free rent and an auto and, if he were apprehended, free support after his release from prison. Barr also stated that the defendant would receive a large sum of money from the decedent's insurance policies. Second, on the night of the murder, Barr called the defendant from a pay phone after he and Bryant had driven past the decedent's house several times without seeing him. After hanging up, Barr stated that the defendant had directed them to try once again. The two then returned to the decedent's residence at which time Barr shot and killed the decedent.

The testimony of Nanette Hambeck also supported the prosecutor's theory of the case. She stated that the defendant had, without giving a reason, asked her to surveil the decedent's home on one occasion. She further testified that after Barr had left with a rifle in his hands, she asked the defendant why she wanted her husband dead. The defendant replied that (1) she would receive an insurance settlement; (2) her husband had molested her daughters; (3) he had attempted to steal her cars; and (4) he was taking too much money out of the business and could not be fired due to union complications. Finally, she testified that on the night of the murder, the defendant received a phone call from Barr during which she directed Barr to continue trying to get a clear shot at Larry Steele.

The testimony of Kent Summerhayes, another friend of the defendant, confirmed Bryant's testimony concerning the defendant's statement that the decedent was "a sitting duck." Summerhayes related that he too had surveilled the decedent's residence at the defendant's request and that the defendant had stated that she wished "the son of a bitch" were dead.

The defendant generally denied the allegations made by the prosecution witnesses and claimed that several of her remarks had been misconstrued. In particular, she stated that she had not asked Barr to kill her husband.

The defendant first contends that the trial court erred in allowing Bryant to testify concerning the contents of conversations between the defendant and Barr, which conversations were later related to Bryant. She argues that the coconspirator exception to the hearsay rule is inherently unreliable and that she has been denied her sixth amendment right to confront witnesses against her.

■ We do not reach the defendant's contentions regarding the validity of the coconspirator exception. Even without those statements made by the defendant to Barr and subsequently related to Bryant, the evidence in support of the jury's verdict is overwhelming. Although the disputed statements corroborated the defendant's solicitation of Barr and Bryant to murder the decedent, their impact was merely cumulative, and error, *if any*, committed by the trial court was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *People v. O'Donnell*, 184 Colo. 104, 518 P.2d 945 (1974). *See People v. Knapp*, 180 Colo. 280, 505 P.2d 7 (1973). *Cf. Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *People v. Craig*, 179 Colo. 115, 498 P.2d 942 *cert. denied*, 409 U.S. 1077, 93 S.Ct. 690, 34 L.Ed.2d 666 (1972); *Oaks v. People*, 161 Colo. 561, 424 P.2d 115 (1967). Likewise, the lack of opportunity to cross-examine Barr regarding his statements to Bryant constituted harmless error. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), *Chapman v. California, supra.*

■ The defendant next argues that the trial court erred in denying her motion for judgment of acquittal which was made after the jury's verdicts of guilty were returned. The defendant argues that since the prosecution made no showing of Barr's ability to form the specific intent to conspire to commit murder and to actually commit first-degree murder, her convictions must be reversed. In support of her argument, the defendant contends that Barr's mental condition was impaired so that he could not form the requisite specific intent to commit the crimes.

We do not agree with the defendant's conclusions. While this court has held that it is necessary to prove beyond a reasonable doubt the guilt of the principal as a prerequisite to convicting the accessory, *Vigil v. People*, 174 Colo. 164, 482 P.2d 983 (1971), we have also held that an accessory may be convicted of murder even if the principal is found not guilty by reason of insanity where it is shown beyond a reasonable doubt that the principal committed the act which resulted in the homicide.[3] *People v. Jones, supra.*

Even assuming *arguendo* that the defense could have shown Barr to be insane, and therefore unable to form the specific intent, the burden of proof required by *Jones* was clearly sustained by the prosecution. First, the parties stipulated that the decedent died of a gunshot wound inflicted by Barr. Substantial evidence from several different sources proved beyond a reasonable doubt that Barr's action was premeditated. Moreover, the statutory requisites for first-degree murder and conspiracy with regard

---

[3] The defendant in the present case was charged as a principal. *See* section 18-1-603, C.R.S. 1973 (complicity statute). The maxims enunciated by us in *Vigil* and *Jones*, however, are equally applicable to the facts of the case at bar.

to the defendant were clearly met. There was competent testimony from two different witnesses with regard to the defendant's persistent efforts to have Barr kill her husband. *See People v. Martinez*, 187 Colo. 413, 531 P.2d 964 (1975). Barr was the instrumentality through which the defendant acted, but it is the defendant's intent, rather than that of Barr, which is in issue.

Viewing the evidence together with the stipulation in the light most favorable to the prosecution, we hold that the defendant's motion for acquittal was properly denied. *People v. Young*, 192 Colo. 65, 555 P.2d 1160 (1976); *People v. Jones*, 191 Colo. 110, 551 P.2d 706 (1975); *People v. Trujillo*, 190 Colo. 45, 543 P.2d 523 (1975); *People v. Black*, 185 Colo. 308, 523 P.2d 1402 (1974); *People v. Jones*, 184 Colo. 96, 518 P.2d 819 (1974); *People v. Lankford*, 185 Colo. 445, 524 P.2d 1382 (1974); *People v. Schlepp*, 184 Colo. 28, 518 P.2d 824 (1974). For similar reasons, we find the defendant's contention that the trial court erred in refusing to allow the introduction of evidence of Robert Barr's mental state as well as hospital records pertaining to Barr to be without merit.

The defendant's third assignment of error is that the trial court erred in refusing to dismiss the charges of first-degree murder and conspiracy to commit first-degree murder. She argues that the statute under which she was charged was repealed before her trial and that the statute which repealed the earlier statute failed to include a saving clause. Consequently, she contends that her convictions must be reversed.

We find no merit in the defendant's argument. The defendant was charged with the commission of a first-degree murder occurring on September 2, 1974, in violation of 1971 Perm. Supp., C.R.S. 1963, 40-3-102. By referendum, that statute was subsequently repealed and reenacted prior to her trial. By its own terms, however, the reenacted statute[4] repealed the statute under which the defendant was charged only as to offenses committed on or after January 1, 1975. Accordingly, we hold that in regard to offenses committed before the effective date, the statute remained in effect, and the defendant was properly convicted under the prior statute.

The defendant next claims error from the admission of a color photograph showing the decedent's body subsequent to his death where the parties had stipulated as to the cause of death. She also claims that the court erred in allowing the testimony of Priscilla Taylor, the decedent's mistress and an eye witness to the murder. We find no error as to either of these contentions.

This court has frequently held that photographs are not rendered inadmissible merely because they reveal shocking details of the

---

[4] Colo. Sess. Laws 1974, ch. 52, § 5 at 253.

crime. *See, e.g., Hampton v. People*, 171 Colo. 153, 465 P.2d 394 (1970); *Monge v. People*, 158 Colo. 224, 406 P.2d 674 (1965). Rather, we have consistently held that the trial court has discretion to determine whether a particular photograph is unnecessarily gruesome and inflamatory. *People v. Hosier*, 186 Colo. 116, 525 P.2d 1161 (1974). Photographs may be used to graphically portray the scene of a crime, the appearance and condition of the deceased, and any other matters which are competent for a witness to describe in words. *Id. Hinton v. People*, 169 Colo. 545, 458 P.2d 611 (1969), *cert. denied*, 397 U.S. 1047, 90 S.Ct. 1375, 25 L.Ed.2d 659 (1970). Unless an abuse of discretion is shown, the trial court's ruling will not be disturbed on review. *People v. Jones*, 184 Colo. 96, 518 P.2d 819 (1974); *Hinton v. People, supra*.

The defendant claims that it was reversible error for the trial court to allow the late endorsement, on two occasions, of witnesses for the prosecution. Shortly before trial, the prosecution sought to endorse Robert Barr. Upon the trial court's granting of the prosecution's motion, the defense sought and obtained a continuance. Shortly before the commencement of the trial, the prosecution again sought the late endorsement of a witness — John Bryant. The court again permitted the endorsement, but the defense proceeded to trial after refusing the trial court's offer of a continuance.

We have previously held that in addition to showing prejudice due to surprise and inadequate opportunity to interview a late endorsed witness, a defendant must make a timely request for a continuance which is denied by the trial court. *People v. Bailey*, 191 Colo. 366, 552 P.2d 1014 (1976); *Reed v. People*, 171 Colo. 421, 467 P.2d 809 (1970); *Peppers v. People*, 166 Colo. 93, 441 P.2d 668 (1968); *Gorum v. People*, 137 Colo. 1, 320 P.2d 340 (1958). Furthermore, we have previously deemed the defendant's failure to make a timely request for a continuance to be a waiver of his claim of prejudicial error. *People v. Bailey, supra*. We therefore hold that there was no prejudicial error in the first late endorsement since the defendant was granted a continuance. *People v. Bailey, supra*. Likewise, there was no prejudicial error in the second late endorsement because the defendant refused the proffered continuance and thereby waived her claim of prejudicial error. *Id.*

The defendant also claims that due to the late endorsement she was forced to seek a continuance and thereby forfeit her right to the speedy resolution of the charges against her. Her argument is at loggerheads with the language of section 18-1-405(3), C.R.S. 1973, as well as Crim.P. 48(b)(3) and 48(b)(6)(VI). Both the statute and Crim.P. 48(b)(3) provide that when the defendant requests and is granted a continuance, the period within which the trial must be had is extended an additional six months from the date of the continuance. Moreover, Crim.P. 48(b)(6)(VI) provides that in computing the time within which a

defendant must be tried, any periods of delay caused by the defendant must be excluded.

There is no indication of bad faith on the part of the prosecutor in endorsing a witness on the day of trial. In the absence of such a showing, the delay resulting from the defendant's tactical decision to seek a continuance is chargeable to her. *United States v. MacClain*, 501 F.2d 1006 (10th Cir. 1974); *People v. Reliford*, 186 Colo. 6, 525 P.2d 467 (1974). *See Saiz v. District Court*, 189 Colo. 555, 542 P.2d 1293 (1975). *See also Adargo v. People*, 159 Colo. 321, 411 P.2d 245 (1966); *Keller v. People*, 153 Colo. 590, 387 P.2d 421 (1963).

■ As her next assignment of error, the defendant complains that the trial court erred in prohibiting the defendant from impeaching three prosecution witnesses by showing the extent to which the three generally used marijuana. We find no error. The defendant failed to establish a proper foundation by showing how the general use of marijuana affects the capacity of a witness to observe and remember events to which he testified. In the absence of any such foundation, the trial court's ruling was within the bounds of its sound discretion.

■ Additionally, the defendant contends that the trial court erred in refusing to instruct the jury on the lesser included offenses of second-degree murder, manslaughter, solicitation of a felony, harassment, and menacing. The defendant argues that the trial court must instruct on lesser included offenses when such instructions are requested and are supported by the evidence. This defendant has, however, failed to point out any testimony which would have justified submission of the requested instructions. After a careful examination of the record, we are likewise unable to find any evidence in support of the instructions on lesser included offenses. Under the circumstances, the trial court did not err in failing to give the requested instructions to the jury.

The defendant's last significant contention of error is that we must reverse the murder conviction because evidence of the same conduct used to establish the crime of conspiracy was used to prove the crime of murder. Again, we do not agree.

■ We have long held that the substantive offense and a conspiracy to commit the same crime constitute separate offenses since the proof of each offense rests on the establishment of separate elements. *See, e.g., People v. Shannon*, 189 Colo. 287, 539 P.2d 480 (1975); *DeBose v. People*, 175 Colo. 356, 488 P.2d 69 (1971); *Marshall v. People*, 160 Colo. 323, 417 P.2d 491 (1966). In the present case, evidence of a conspiracy resulted in a conspiracy conviction while the same evidence *plus the stipulated fact of the murder* resulted in the defendant's conviction for first-degree murder.

We find no merit in the other assignments of error.

Judgment affirmed.

MR. JUSTICE ERICKSON and MR. JUSTICE CARRIGAN do not participate.