The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Gary THORPE, Defendant-Appellant.

No. 80SA337.

Supreme Court of Colorado,
En Banc.

Feb. 8, 1982.
Rehearing Denied March 15, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Morgan Rumler, Asst. Atty. Gen., Litigation Section, Denver, for plaintiff-appellee.

Jane S. Hazen, Denver, for defendant-appellant.

LEE, Justice.

The defendant-appellant, Gary Thorpe, was convicted by jury of murder in the first degree, aggravated robbery, and conspiracy to commit aggravated robbery. We affirm the convictions.

On October 12, 1978, William Sather, proprietor of Sather Jewelry in Denver, was shot to death during an aggravated robbery of his store. An information was filed against the defendant and Richard Banks on November 14, 1978 charging them with first degree murder. The defendant, who was 16 years of age at the time, was charged in the district court pursuant to section 19–1–104(4)(b)(I), C.R.S.1973 (1978 Repl. Vol. 8).[1] Separate trials were granted on motion of the defendant.

On November 17, 1978, while the defendant was in custody and after he and Banks had been arraigned, he contacted Officer Thomas P. Haney of the Denver Police Department. In response to the call, Haney went to the detention center and spoke with the defendant in the presence of his mother. Haney advised the defendant of his rights and left him alone with his mother to discuss the situation. Thereafter, the defendant indicated that he wished to make a statement and Haney returned and recorded it. In the statement, the defendant described his role in the robbery and claimed that Banks had killed the victim.

At trial the people presented evidence that the defendant's palm prints had been identified on a display case in the jewelry store and that Banks' fingerprints had been found inside a watch case. Two witnesses, Rodney Chavez and Raymond Riggins, identified the defendant as the black man they had seen running in the alley behind the jewelry store, just before the robbery was discovered. The defendant was seen carrying boxes in a white cloth. They also saw a green Cadillac driven by a white man whom they identified as Banks.

Patrice Hill testified that on the morning of October 12, 1978, the defendant and Richard Banks entered the house she shared with Banks, John James, and her sister. The defendant was carrying a white bundle and Hill noticed blood on his clothing. She also identified a green Cadillac that she had seen the defendant drive.

John James testified that Richard Banks had earlier asked him to assist with the robbery, but James declined to do so. He stated that on October 12 the defendant had entered his house wearing bloody clothing and carrying a white bundle out of which some jewelry fell. James stated that he gave the police information regarding the robbery hoping to receive consideration on assault charges Patrice Hill had filed against him. He was released and the charges were dropped after he gave the statement.

The defendant raises the following arguments for reversal of his conviction. First, he contends that section 19–1–104(4)(b)(I) is unconstitutional and its application to him denied him due process and equal protection of the law. Second, the defendant asserts that it was prejudicial error to deny his motion to suppress his statement and to admit the statement into evidence. Third, it was error to admit the identification testimony of witnesses Rodney Chavez and Raymond Riggins. Finally, the defendant argues it was prejudicial error to admit two photographs of the murder victim which he contends were not probative of any issue and served only to inflame the jury. We discuss the issues raised in order.

## I.

Defendant's constitutional argument is based on his contention that section 19–1–104(4)(b)(I), C.R.S.1973 (1978 Repl. Vol. 8), is invalid because it allows a district attorney to charge a child 14 years of age or older alleged to have committed a crime of violence defined as a class 1 felony, with the

---

1. Section 19–1–104(4)(b)(I) provides in relevant part:

   "(b) A child may be charged with the commission of a felony ... when the child is:

   "(I) Alleged to have committed a crime of violence defined by section 18–1–105, C.R.S. 1973, as a class 1 felony, and is fourteen years of age or older..."

commission of a felony and to prosecute the child in a criminal proceeding in the district court rather than as a juvenile in the juvenile court. The defendant reasons that the decision of the prosecutor to charge a juvenile as an adult when there are no statutory guidelines and without a prior hearing cannot be constitutionally justified as a valid exercise of prosecutorial discretion. Since there is no hearing prior to the charging process at which the juvenile may be present and heard, and be represented by counsel, the argument goes, he is denied due process. Furthermore, since the prosecutor may choose to prosecute one 14-year-old violent offender as an adult and another 14-year-old violent offender as a juvenile, and since there are no statutory criteria to guide him in making that decision, the statute denies one in the defendant's position equal protection of law.

The defendant recognizes that the proposition he urges us to adopt is contrary to this court's decision in *Myers v. District Court*, 184 Colo. 81, 518 P.2d 836 (1974), which considered a predecessor section of the Juvenile Code, now codified as section 19–1–104(4)(b)(II), C.R.S.1973 (1978 Repl. Vol. 8).[2] In *Myers* we held:

"Petitioners' final argument is that the broad discretion granted to the district attorney by C.R.S.1963, 22–1–4(b)(iii) denies them due process and equal protection of the laws.

"It is well settled that a prosecutor has constitutional power to exercise his discretion in deciding which of several possible charges to press in a prosecution. *See People v. Couch*, 179 Colo. 324, 500 P.2d 967 (1972); *People v. James*, 178 Colo. 401, 497 P.2d 1256 (1972); *People v. McKenzie*, 169 Colo. 521, 458 P.2d 232 (1969). It follows that the district attorney may properly invoke the concurrent

jurisdiction of the district court under C.R.S.1963, 22–1–4(b)(iii) and C.R.S.1963, 22–1–3(17)(b)(iii) in deciding to proceed against a person between the ages of sixteen and eighteen in district rather than juvenile court. *United States v. Cox*, 473 F.2d 334 (4th Cir. 1973); *United States v. Bland*, 472 F.2d 1329 (D.C.Cir. 1972)." (Footnote omitted.)

In *People v. District Court*, 191 Colo. 28, 549 P.2d 1317 (1976), we again upheld the exercise of prosecutorial discretion. In a juvenile proceeding the district attorney elected to amend the petition in delinquency to include a more serious felony, thus causing the case to be transferred for trial as a criminal case. We there stated:

"It is clear that the design of the statute is to permit the juvenile court, in case of a less serious felony, to determine in a transfer hearing whether, in the best interests of the accused juvenile, the case should be transferred to the criminal side of the court, section 19–1–104(4)(a); but in those circumstances where a more serious felony is charged, as set forth in subsections (4)(b)(I), (II), and (III), no such discretion lies in the court to retain the case in the juvenile side of the court when the district attorney elects to have the case transferred for trial as a criminal action." *People v. District Court, supra*.

The prohibition against judicial intervention in or control of the exercise of prosecutorial discretion flows from the doctrine of separation of powers, expressly set out in Article III of the Colorado Constitution and inherent in the enumerated powers of the United States Constitution. The defendant acknowledges this firmly established principle and recognizes our many decisions upholding the exercise of discretion by a prosecutor in determining what

2. Section 19–1–104(4)(b)(II) provides in relevant part:

"(b) A child may be charged with the commission of a felony ... when the child is:

"(II) Alleged to have committed a crime defined by section 18–1–105, C.R.S.1973, as a class 2 or a class 3 felony or a nonclassified felony punishable by a maximum punishment

of life imprisonment or death, except those felonies defined by section 18–3–403(1)(e), C.R.S.1973, and is sixteen years of age or older, and the child has been adjudicated a delinquent child within the previous two years and the act for which the child was adjudicated a delinquent would have constituted a felony if committed by an adult...."

charges shall be brought. *See, e.g., People v. District Court*, 186 Colo. 335, 527 P.2d 50 (1974) (prosecutor's election not to consent to deferred prosecution); *People v. Couch*, 179 Colo. 324, 500 P.2d 967 (1972) (election to proceed under a felony statute rather than misdemeanor statute); *People v. James*, 178 Colo. 401, 497 P.2d 1256 (1972) (determination by prosecutor under which statute to prosecute); *People v. McKenzie*, 169 Colo. 521, 458 P.2d 232 (1969) (election to charge defendant as a felonious possessor of marijuana rather than as a misdemeanant user).

The defendant, however, would have us overrule *Myers, supra,* and *People v. District Court, supra,* and adopt an exception to the principle of prosecutorial discretion in juvenile cases. He urges that we adopt the view espoused by the dissent in the case of *United States v. Bland,* 472 F.2d 1329 (D.C.Cir.1972), that since the consequences to the child from his prosecution in a criminal case vary so significantly from those flowing from a juvenile proceeding, the child should be afforded the same protections as he would have were the case filed in the juvenile court and transfer to the criminal division sought. *See,* sections 19–1–104(4)(a), 19–1–107, and 19–3–108, C.R.S. 1973 (1978 Repl. Vol. 8).

The defendant cites *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), in support of his argument that a hearing with the assistance of counsel is required before the "critically important" decision is made to put the child through the criminal court process. This case, though instructive, lends no support to his position. There, the Federal Juvenile Court Act required a waiver of jurisdiction by the juvenile court before criminal proceedings could be brought by the United States Attorney.[3] The Federal Juvenile Code vested original and exclusive jurisdiction of a child in the juvenile court and contained no provisions for a direct filing in a criminal proceeding, as does our statute, section 19–1–104(4)(b)(I).

■■ We decline to require that a quasi-judicial hearing be held by the district attorney as a precondition to his determination that a child 14 years of age or older alleged to have committed a crime of violence defined as a class 1 felony shall be prosecuted in a criminal proceeding. The majority opinion in *Bland, supra,* which is consistent with our view, holds that, even though a prosecutor is an officer of the court, he is nevertheless a member of the executive department and acting as such when exercising his discretion in choosing what charges to file and in what court they should be filed. Therefore, while there may be circumstances in which courts would be entitled to review the prosecutorial discretion function, "in the absence of such 'suspect' factors as 'race, religion, or other arbitrary classification,' the exercise of discretion by the United States Attorney [in deciding whether a person shall be charged as a juvenile or an adult] in the case at bar involves no violation of due process or equal protection of the law."[4] *United States v.*

---

**3.** "If a child sixteen years of age or older is charged with an offense which would amount to a felony in the case of an adult, or any child charged with an offense which if committed by an adult is punishable by death or life imprisonment, the judge may, after full investigation, waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult; or such other court may exercise the powers conferred upon the juvenile court in this subchapter in conducting and disposing of such cases." D.C.Code § 11–914 (1961). The decision in *United States v. Bland, supra,* concerned D.C.Code 16–2301(3)(A), which allowed a direct filing in the U.S. District Court by the United States Attor-

ney without juvenile court intervention against persons over 16 charged with certain violent crimes.

**4.** There is no issue here, and the defendant does not contend that the district attorney constitutionally abused his discretion in this case by considering any suspect factors such as race, religion, or other arbitrary classification in determining that the defendant should be tried in a criminal proceeding rather than a juvenile proceeding.

We also note that even when a district attorney elects to file criminal charges against a juvenile in district court the court retains the power "to make any disposition of the case that any juvenile court would have and shall have the power to remand the case to the

*Bland, supra,* at 1337. *See also, United States v. Quinones,* 516 F.2d 1309 (1st Cir. 1975); *Cox, Jr. v. United States,* 473 F.2d 334 (4th Cir. 1973); *United States v. Cox,* 342 F.2d 167, 171 (5th Cir. 1965), *cert. denied; Cox v. Hauberg,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965); *State v. Grayer,* 191 Neb. 523, 215 N.W.2d 859 (1974). The statutory scheme prescribed by the legislature is clear and vests that determination solely in the discretion of the district attorney. If change in the procedures is deemed desirable, that is a matter for the judgment of the General Assembly.

■ Accordingly, we reject the defendant's argument that he was denied equal protection of the law because the district attorney chose to file a criminal action against him whereas another in his same circumstance could be treated as a juvenile and charged with delinquency. We reiterate that the conscious exercise of selectivity in the enforcement of laws is not in itself a constitutional violation of equal protection of the law, absent a showing that a prosecutor has exercised a policy of selectivity based upon an unjustifiable standard such as "race, religion, or any other arbitrary classification," which was not shown here. *People v. MacFarland,* 189 Colo. 363, 540 P.2d 1073 (1975).[5]

■ We also reject the defendant's challenge to the facial constitutionality of this statute. As we stated in *People v. McKenzie, supra,* "[W]e must recognize that the legislature is free to adopt any classification it deems appropriate to promote the general welfare, so long as the classification bears a reasonable relation to a proper legislative purpose and is neither arbitrary nor discriminatory and operates equally on all persons within the classification." It is clear that the General Assembly intended to exclude certain offenders from the juvenile

court system by defining certain serious offenses as per se criminal and properly within the constitutional jurisdiction of the district court even if committed by a juvenile over the age of 14. This is not unreasonable in light of the apparent legislative decision that certain repeat offenders, or those who have committed serious offenses, should be separated from those juveniles who perpetrate relatively less serious or less violent crimes and who, in the view of the legislature, are more likely candidates for rehabilitation.

We are not persuaded by defendant's arguments that section 19–1–104(4)(b)(I), C.R.S.1973 (1978 Repl. Vol. 8), is invalid and we hold it to be constitutional on its face and as applied to the defendant.

## II.

■ The defendant argues that the trial court erred in admitting his confession into evidence because it was not voluntarily given. He further claims that he did not waive his right to counsel and that he was psychologically coerced into making the statement. However, the totality of the circumstances indicate to us that the defendant's statement was made knowingly, intelligently, and voluntarily, and therefore it was properly admitted into evidence against him.

It is undisputed that the defendant contacted the police department while he was in detention subsequent to his advisement of the charges against him. Police Detective Haney, who had not previously worked on the case, was summoned to the detention center where he met with the defendant and his mother. The officer testified that he was unaware that the defendant had secured court-appointed counsel at the time of their meeting, and he did not know

juvenile court for disposition at its discretion." Section 19–1–104(4)(c), C.R.S.1973 (1978 Repl. Vol. 8).

**5.** This is not to say that the district attorney has no guidelines for the exercise of his discretion. The criteria specified in section 19–3–108(2)(b)(I) through (VI), C.R.S.1973 (1978 Repl. Vol. 8), for transfer from the juvenile

court, as well as the legislative declaration of the purpose of the Juvenile Code, are available and should guide him in his decision to by-pass the juvenile court and proceed directly in the district court. Additionally, he should be governed by the standards implicit in the constitutional and statutory duties of his office.

where the records of counsel were kept at the police department. He made no effort to ascertain whether counsel had been appointed, nor to advise the appointed counsel to attend the meeting with the defendant and his mother.[6]

■ For a statement to be admissible it must be voluntary. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *People v. Fordyce,* Colo., 612 P.2d 1131 (1980). The prosecution must prove by a preponderance of the evidence that a confession was voluntarily made. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). The trial court must look at the totality of the circumstances to determine whether the defendant has effectively relinquished his rights. The court's findings of fact concerning the voluntariness of a confession will be upheld if supported by the record. *People v. Parks,* 195 Colo. 344, 579 P.2d 76 (1978).

■ The defendant argues that his youth, as well as the psychological coercion applied by his co-defendant, contributed to his giving an involuntary statement. He also claims that he did not voluntarily waive his right to assistance of counsel. Youth has been recognized as a factor in calculating the voluntariness of a juvenile's statement. *See, Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948). However, youth is but one factor to be considered. *See, e.g., Harris v. Riddle,* 551 F.2d 936 (4th Cir. 1977), *cert. denied,* 434 U.S. 849, 98 S.Ct. 160, 54 L.Ed.2d 118. Thorpe had been formally advised of his rights in court and by Detective Haney just prior to the time the statement was given. Thorpe does not assert that Haney engaged in any wrongful conduct which coerced or influenced him to make the statement. Thorpe met privately with his mother to discuss his situation and nothing in the record indicates that either of them at any time asked to confer with counsel.

Under the facts and circumstances presented in this case, we hold that there is sufficient evidence in the record to support the trial court's finding that the confession was voluntary.

■ In addition, the fact that a statement was obtained without notification of counsel and out of the presence of counsel does not by itself amount to an unconstitutional violation of the defendant's rights. *See, Coughlan v. United States,* 391 F.2d 371 (9th Cir. 1968), *cert. denied,* 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139 (1968); *Wilson v. United States,* 398 F.2d 331 (5th Cir. 1968), *cert. denied,* 393 U.S. 1069, 89 S.Ct. 727, 21 L.Ed.2d 712. Not all meetings between the police and a defendant must be attended by counsel. A defendant may waive the right to assistance of counsel as well as his right to remain silent. In addition to being voluntary, the waiver must be knowing and intelligent, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); however, it need not be express, *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *People v. Davis,* 194 Colo. 466, 573 P.2d 543 (1978); *Reed v. People,* 171 Colo. 421, 467 P.2d 809 (1970). The existence of a knowing and intelligent waiver is to be determined from "the particular facts and circumstances surrounding [each] case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ That the defendant did not waive his right to counsel at the time the trial court appointed counsel to represent him does not change our conclusion that he later effectively waived his right to counsel. *See Olguin v. People,* 179 Colo. 26, 497 P.2d 1254 (1972), *Reed v. People, supra.*

---

**6.** The transcript of the taped statement indicates that Detective Haney advised Thorpe of his rights before he made his statement, and that Thorpe and his mother signed an advisement form consenting to waiver of his right to remain silent. After Thorpe had made incriminating statements, Haney asked Thorpe whether he had discussed his situation with his attorney or with his mother, and Thorpe stated that he had not. Thorpe admitted, however, that he had been given the opportunity to talk with his mother.

We hold that under the circumstances of this case it was not error for the trial court to admit defendant's statement into evidence.

### III.

The defendant next contends that the trial court erred in admitting in-court identifications by witnesses Rodney Chavez and Raymond Riggins because the identification procedure was suggestive and there was insufficient independent basis for the identification.

Riggins and Chavez were eye witnesses who observed both Banks and Thorpe leaving the scene of the crime, although they were not aware at that time that a crime had been committed. Riggins and Chavez came forward upon learning that Sather had been robbed and murdered, and offered a description of the persons they had seen fleeing. The police prepared a photographic array but they were unable to identify Thorpe's photograph.[7] Chavez later identified Thorpe at a preliminary hearing and Riggins recognized and identified Thorpe when he saw him standing in the hallway near the preliminary hearing courtroom in which Riggins had been called to testify. The witnesses' inability to identify Thorpe from a photographic array goes to the weight of their in-court testimony but not to its admissibility. See, People v. Watkins, 191 Colo. 440, 553 P.2d 819 (1976); Duran v. People, 162 Colo. 419, 427 P.2d 318 (1967).

The defendant argues that the trial judge should have made factual findings regarding the identifications. Huguley v. People, 195 Colo. 259, 577 P.2d 746 (1978). The judge ruled that the identifications were admissible because they were not a result of impermissibly suggestive circumstances. See, e.g., Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); People v. Jones, 191 Colo. 385, 553 P.2d 770 (1976); see also Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1967); People v. Mack, Colo., 638 P.2d 257 (1981); People v. Smith, Colo., 620 P.2d 232 (1980). Because there is nothing in the record which would lead us to conclude that the testimony had been tainted by a prior identification under impermissibly suggestive circumstances, we find no merit in the defendant's argument.

Moreover, the confession of the defendant was admitted into evidence and provided substantial evidence of guilt, thus making the eye witness identifications cumulative of facts that were otherwise presented to the jury. We find no error in the admission of this testimony.

### IV.

The defendant contends that two gory photographs of the victim were erroneously admitted into evidence at his trial. He claims that the photographs were not probative of any material issue in the case and served only to inflame the jury. The evidence consisted of two photographs of the victim, one taken at the morgue and depicting the fatal wound to the head, and the other taken at the scene of the crime showing the victim lying on the floor of his jewelry shop surrounded by scattered jewelry.

Admissibility of a photograph is a matter within the discretion of the trial judge. People v. Sepeda, 196 Colo. 13, 581 P.2d 723 (1978). Photographs are admissible if they are relevant and probative, and accurately descriptive of matters which would be competent for a witness to describe in words. Therefore, photographs depicting the circumstances surrounding death are generally unobjectionable. People v. Sepeda, supra; People v. Jones, 184 Colo. 96, 518 P.2d 819 (1974). Reversal is required where photographs having no probative value, or only slight probative value, yet depicting scenes which are likely to have an inflammatory or prejudicial effect on the jury, are admitted into evidence. See, People v. Pearson, 190 Colo. 313, 546 P.2d 1259 (1976); Archina v. People, 135 Colo. 8, 307 P.2d 1083 (1957).

---

7. The two witnesses had successfully identified Banks from the photo array.

We find no abuse of discretion in the admission of the photographs into evidence. They are probative of the circumstances of the death of Mr. Sather. They are not so shocking that their probative value was outweighed by the likelihood that they would inflame the passions of the jury or cause them "to abandon their mental processes and give expression to their emotions." *Archina v. People, supra.*

We find no merit in the defendant's other arguments for reversal.

Accordingly, the judgment of the trial court is affirmed.