The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Arealous E. HUGHES, Defendant–
Appellant.

No. 95CA0242.

Colorado Court of Appeals,
Div. V.

Feb. 20, 1997.

As Modified on Denial of Rehearing
April 17, 1997.

Certiorari Denied Oct. 27, 1997.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Laurie A. Booras, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, for DefendantAppellant.

Opinion by Judge DAVIDSON.

Defendant, Arealous E. Hughes, appeals from the judgments entered on a jury verdict finding him guilty of first degree aggravated motor vehicle theft and vehicular eluding and the sentence imposed for these convictions. His primary contentions on appeal challenge the interpretation and constitutionality of the direct filing provisions of The Colorado Juvenile Justice System Act, §§ 19–2–805 & 19–2–806, C.R.S. (1996 Cum.Supp.) (repealed and reenacted as §§ 19–2–517 & 19–2–518, C.R.S. (1996 Cum.Supp.)), as they have been applied to him. He also alleges certain trial errors. We affirm.

The charges here arose when a police officer attempted to initiate a traffic stop after defendant failed to signal for a right turn. Defendant slowed and pulled close to the curb, but did not stop. When the officer activated the siren, defendant sped away from the curb, and led the police officer on a short chase that reached speeds of fifty miles per hour. The chase ended when defendant's car collided with a police vehicle, injuring the officer inside.

Defendant was 17 years old at the time of the offense. Pursuant to § 19–2–805(1)(a)(II)(A), C.R.S. (1996 Cum.Supp.), the prosecutor moved to file against defendant directly in district court on the ground that, in addition to first degree aggravated motor vehicle theft and vehicular eluding, defendant was also charged with first degree assault on a police officer, a crime of violence. Upon

trial, defendant was convicted of the former offenses, but was acquitted of the assault charge.

## I.

■ For his convictions for aggravated motor vehicle theft and vehicular eluding, the district court sentenced defendant as an adult to the Department of Corrections for concurrent six and three year terms. Because he had been acquitted of the charge of first degree assault on a peace officer, defendant contends that the district court did not have subject matter jurisdiction over his case and, therefore, was required to remand his case to the juvenile court for sentencing. We disagree.

■ Section 19–2–805, the statute applicable here, provides that:

> (1)(a) A juvenile may be charged by the direct filing of an information in the district court or by indictment only when:
>
> . . . .
>
> (II) The juvenile is fourteen years of age or older and:
>
> (A) Is alleged to have committed a felony enumerated as a crime of violence pursuant to section 16–11–309, C.R.S.

Thus, by the plain language of § 19–2–805(1)(a)(II)(A), it is the allegation of the commission of the offense of first degree assault and not, as defendant contends, the conviction for that offense, that triggers the district court's subject matter jurisdiction here. The General Assembly has determined that the seriousness of allegations alone is sufficient to subject a juvenile over the age of 14 to the jurisdiction of the district court. See *People v. Davenport*, 43 Colo. App. 41, 602 P.2d 871 (1979) (use of words, "charged" and "alleged" in previous version of statute demonstrated that the General Assembly intended that the indictment, not the subsequent conviction, determined the appropriate jurisdiction); see also *People v. Hernandez*, 690 P.2d 263 (Colo.App.1984) (sentencing of juvenile in district court proper, even though basis for transfer from juvenile court was allegation of attempted murder, of which juvenile was acquitted).

Here, the first degree assault charge was bound over after a preliminary hearing and, thus, provided the basis for the district court's jurisdiction.

■ Furthermore, § 19–2–805(2), C.R.S. (1996 Cum.Supp.) provides that:

> Whenever criminal charges are filed by information or indictment in the district court pursuant to this section, the district court shall sentence the juvenile as follows
>
> . . . .

Under this statutory scheme, if, as here, jurisdiction is properly vested in the district court, that court is precluded from remanding a defendant's case to the juvenile court for sentencing. Once charges are directly filed in district court against a juvenile which include and are based on allegations of a crime of violence, the sentencing of that juvenile for any conviction resulting from those charges must be done by the district court.

Defendant points out that in a different subsection—§ 19–2–805(1)(a)(IV), C.R.S. (1996 Cum.Supp.), which provides for direct filing when a juvenile defendant previously has been the subject of a direct filing—if the defendant is found not guilty in a trial of the offense that was the subject of the first direct filing, the second direct filed case must be remanded to the juvenile court.

However, defendant's argument notwithstanding, this subsection is different from § 19–2–805(1)(a)(II)(A). First, it contains clear and precise language requiring a remand which is noticeably absent in § 19–2–805(1)(a)(II)(A). Secondly, it demonstrates that the General Assembly was aware of its option to require a remand to juvenile court and specifically decided the circumstances under which that should occur. See *Allstate Insurance Co. v. Smith*, 902 P.2d 1386 (Colo. 1995) (use of materially different language in statutory subsections indicates that General Assembly did not intend identical results).

These distinctions are not arbitrary. If jurisdiction is triggered specifically because of the existence of an earlier direct filing, it is logical to divest the district court of juris-

diction in the later case if the basis for jurisdiction—the case underlying the first direct filing—is dismissed. Conversely, it is logical *not* to include a requirement that the case be remanded to the juvenile court should an acquittal occur when, as here, the triggering event for the district court's jurisdiction is the seriousness of the allegations against the juvenile.

## II.

Defendant contends that, if the statutory scheme is interpreted to require that he be sentenced as an adult, it violates constitutional principles of equal protection. His theory is that equal protection is violated because "other juvenile defendants similarly situated [have] the opportunity to have the district court dispose of their cases as would a juvenile court or to have the district court [remand] the case to the juvenile court for sentencing." We disagree.

■ Equal protection of the laws guarantees that similarly situated persons will receive like treatment. *People v. Mozee,* 723 P.2d 117 (Colo.1986). As long as a fundamental right is not at stake and the legislative scheme is not based either on a suspect classification or a gender-based classification, the test for determining if there is an equal protection violation is whether the classification is reasonable and bears a rational relationship to legitimate state objectives. *People v. Wiedemer,* 852 P.2d 424 (Colo.1993).

■ Defendant does not argue that the legislative scheme is based on a suspect classification or on a gender-based classification. And, despite defendant's contention to the contrary, there is no fundamental right to be treated as a juvenile that requires a review of the classifications here under a standard of strict scrutiny. *See People v. Thorpe,* 641 P.2d 935 (Colo.1982) (applying rational basis review to exercise of discretion to treat juvenile as juvenile or adult); *People in Interest of D.G.,* 733 P.2d 1199 (Colo.1987) (classifications among juveniles evaluated under rational basis review because no fundamental right or suspect class implicated). Accordingly, we apply a rational basis standard of review.

## A.

■ Pursuant to § 19–2–805(2), as pertinent here, a district court is required to sentence a juvenile who is convicted of charges directly filed in district court either:

(a) As an adult; or

(b)(I) To the youthful offender system in the department of corrections in accordance with section 16–11–311, C.R.S., if the juvenile is convicted of an offense described in [the pertinent provisions] of this section; except that, if a person is convicted of a class 1 or class 2 felony, any sexual offense described in part 4 of article 3 of title 18, C.R.S., or a second or subsequent offense described in [pertinent subsections] for which such person received a sentence to the department of corrections or to the youthful offender system, such person shall be ineligible for sentencing to the youthful offender system.

(c) Pursuant to the provisions of this article [i.e., as a juvenile], if the juvenile is less than sixteen years of age and is convicted of an offense other than a class 1 or class 2 felony or a crime of violence as defined under section 16–11–309, C.R.S.

Although this section determines which court has jurisdiction to sentence a juvenile, it does not eliminate the court's ability to otherwise exercise any statutorily authorized discretion. For example, if sentenced as an adult in district court, a juvenile can be sentenced to incarceration within the statutory sentencing range for the crime. Alternatively, if applicable, the juvenile could also be sentenced to a community corrections program, a specialized restitution or community service program, or to a home detention program, or could be granted probation, or have his or her sentence suspended. *See* § 16–11–101, C.R.S. (1986 Repl.Vol. 8A) & § 16–11–101(1), C.R.S. (1996 Cum.Supp.).

Nonetheless, defendant claims that this statutory scheme, as it applies to him, violates the equal protection clauses of the

United States and Colorado Constitutions because other juveniles who are sentenced pursuant to § 19–2–805(2)(b)(I) (those who are filed on directly in district court based on a crime of violence and who are convicted of that crime) and § 19–2–805(2)(c) (those under the age of sixteen who are filed on directly in district court based on the commission of a crime of violence, but who are acquitted of that crime) may be sentenced in juvenile court or sentenced to the youthful offender program whereas he must be sentenced, as noted, as an adult. We are not persuaded.

### 1.

First, it is not a violation of equal protection for the General Assembly to provide for the sentencing of a juvenile convicted of a crime of violence to the youthful offender program while providing that a juvenile not convicted of a crime of violence be sentenced as an adult.

The youthful offender program was enacted in order to create "a new approach to solving the problem of violent juvenile offenders." *See* § 16–11–311(12), C.R.S. (1996 Cum.Supp.). It was specifically designed to provide "as a sentencing option for certain youthful offenders a controlled and regimented environment that affirms dignity of self and others, promotes the value of work and self-discipline, and develops useful skills and abilities through enriched programming." *See* § 16–11–311(1)(a), C.R.S. (1996 Cum. Supp.).

Under this program, violent juveniles are the subject of intensive rehabilitative efforts in a separate, highly structured system that is designed to change attitudes and promote self-discipline. *See* § 16–11–311(3), C.R.S. (1996 Cum.Supp.). The decision to sentence non-violent juvenile offenders over the age of sixteen as adults while placing violent juvenile offenders in this specialized program is thus rationally related to the dual goals of protecting the interests of society and juveniles. *See* §§ 19–1–102(1)(a) & 19–1–102(2), C.R.S. (1986 Repl.Vol. 8B).

### 2.

■ Secondly, no violation of equal protection arises under the sentencing scheme here which provides that juveniles older than sixteen are to be sentenced as adults and those younger than sixteen are to be sentenced as juveniles, even though they may be convicted of the same acts.

■ Legislative classifications based on age will not violate equal protection if they are rationally related to legitimate governmental objectives. *See People v. Thorpe, supra* (upholding statute allowing direct filing of charges in district court against juveniles fourteen or older); *Myers v. District Court,* 184 Colo. 81, 518 P.2d 836 (1974) (upholding statute allowing certain juveniles older than sixteen to be treated as adults).

The Children's Code is concerned with "rehabilitating children, assisting them in becoming responsible and productive members of society, and preventing them, while at an impressionable and vulnerable age, from becoming criminals." *People in Interest of M.C.,* 750 P.2d 69, 70 (Colo.App.1987); *see* § 19–1–102, C.R.S. (1986 Repl.Vol. 8B). The General Assembly's decision to draw a distinction on age and provide that younger juveniles—those who are more impressionable and vulnerable—may be sentenced in juvenile court while older juveniles are sentenced as adults, therefore, is rationally related to the state's interest in protecting both the public and the welfare of juveniles.

### B.

■ Defendant also argues that a violation of equal protection arises because, under § 19–2–806(1)(d), C.R.S. (1996 Cum.Supp.) juveniles transferred to district court from juvenile court can be sentenced as juveniles but juveniles in defendant's position must be sentenced as adults. Resolution of this contention necessarily hinges on whether it violates equal protection for juveniles convicted of the same crimes to face different punishments merely because prosecutorial discretion to file against a juvenile in district court was invoked in one instance but not in another.

However, prosecutorial discretion is a hallmark of our criminal justice system that flows from the doctrine of separation of powers. *See People in Interest of J.A.L.,* 761 P.2d 1137 (Colo.1988). And, in order to preserve the required separation of powers, a prosecutor's charging decision may not be controlled or limited by judicial intervention. *People v. District Court,* 632 P.2d 1022 (Colo. 1981). Thus, "the conscious exercise of selectivity in the enforcement of laws is not in itself a constitutional violation of equal protection...." *People v. Thorpe, supra,* 641 P.2d at 940. Further, such is true even if a potentially greater penalty may result from the decision to file against one juvenile and not against another. *Myers v. District Court, supra,* 184 Colo. at 84, 518 P.2d at 838 ("[T]he district attorney may properly invoke the concurrent jurisdiction of the district court [in] deciding to proceed against a person between the ages of sixteen and eighteen in district court rather than juvenile court." (analyzing predecessor statute)).

Accordingly, it is a valid exercise of prosecutorial discretion for prosecutors to select which of the juveniles who meet the statutory requirement for direct filing will be filed upon in district court. And, because it is not unreasonable to treat certain offenders differently from others, *see People v. Thorpe, supra,* no equal protection violation arises here.

### III.

Defendant also argues that the statutes which provide for his sentencing as an adult while providing that others may be sentenced as juveniles or to the juvenile offender program violate substantive due process. We disagree.

The standard of review for a substantive due process claim is the same as for an equal protection claim. *See People v. Wiedemer, supra; Ferguson v. People,* 824 P.2d 803 (Colo.1992) (absent a fundamental right or a suspect classification, no violation of substantive due process arises when a statute bears a rational relation to a legitimate governmental interest).

Thus, for the same reasons the statutory sentencing scheme did not violate equal protection, we also conclude that no violation of substantive due process arose here.

### IV.

■ Defendant contends that before he was tried as an adult in district court, a hearing should have been held to determine whether punishment as an adult was appropriate. He contends that failure to do so was a violation of procedural due process.

However, defendant has no liberty interest in being treated as a juvenile that implicates procedural due process here. We also note that the decision where to file charges was, as discussed, a function of prosecutorial discretion, and therefore, no such hearing is required. *See People v. Thorpe, supra* (rejecting argument that hearing was required before defendant lost benefit of juvenile court jurisdiction).

### V.

■ Defendant's argument that § 19–2–805 violates Colo. Const. art. VI, § 19, concerning the uniform operation of laws was not raised in the trial court. Therefore, we do not address it. *See People v. Cagle,* 751 P.2d 614 (Colo.1988), *appeal dismissed,* 486 U.S. 1028, 108 S.Ct. 2009, 100 L.Ed.2d 597 (1988) (it is axiomatic that appellate courts will not consider constitutional issues raised for the first time on appeal).

### VI.

■ Defendant also contends that the trial court abused its discretion by imposing concurrent six-year and three-year sentences rather than a lesser sentence. He claims that the court failed to give appropriate weight to his age and circumstances of the case, and did not appropriately consider that it was his first adult felony conviction. We disagree.

■ Sentencing is discretionary, *Flower v. People,* 658 P.2d 266 (Colo.1983), and in order for a sentence to constitute an abuse of discretion, it must be "manifestly arbitrary,

unreasonable, or unfair." *People v. Milton,* 732 P.2d 1199, 1207 (Colo.1987).

■ Absent a showing that the court's wide latitude in sentencing was marred by a clear abuse of discretion, a sentencing decision will not be reversed on appeal. *People v. Lowery,* 642 P.2d 515 (Colo.1982).

■ Here, both sentences imposed were within the presumptive range. *See* § 18–1–105, C.R.S. (1996 Cum.Supp.). When a sentence is in the presumptive range, a trial court need not go into an exhaustive analysis of the reasons behind the sentence imposed, but need only set forth the basic reasons and primary factual considerations bearing on the court's sentencing decision. *People v. Watkins,* 200 Colo. 163, 613 P.2d 633 (1980).

In imposing defendant's sentence, the trial court stated that it was considering rehabilitation, punishment, and public safety. The court noted the danger in defendant's actions of stealing a car and embarking on a high-speed chase because if this type of behavior continued, someone was likely to be killed. The court also noted that defendant previously had been granted probation in earlier juvenile cases and had not been rehabilitated.

Here, the sentence was within the statutory range, and was based on appropriate reasons which are supported by the record. Hence, it will not be disturbed.

### VII.

At trial, the prosecutor exercised a peremptory challenge against an African–American juror. Defendant challenged the prosecution's actions on the basis of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), alleging that the prosecutor had excluded the prospective juror on the basis of race. In response, and before the court ruled, the prosecutor explained that he had excused the juror primarily because he had been non-responsive during voir dire. The trial court determined that defendant had not made out a *prima facie* case of discrimination. Defendant contends that this was error. We disagree.

Under *Batson v. Kentucky, supra,* courts apply a three-part test to determine if a peremptory challenge constitutes purposeful discrimination against a cognizable group in violation of the Equal Protection Clause.

Initially, the defendant must make out a *prima facie* case showing that the prosecutor excluded a prospective juror on account of race. If the defendant succeeds, the prosecutor must state a race-neutral explanation for excluding the prospective juror. Once the prosecution has articulated a race-neutral justification for the peremptory strike, the defendant must be given some opportunity to respond to the prosecutor's explanation and to prove purposeful racial discrimination, and the trial court then must decide whether the opponent of the challenge has proved purposeful race discrimination. *People v. Marion,* 941 P.2d 287 (Colo.App.1996) (reviewing each of the three steps required under *Batson*).

■ Initially, we address defendant's argument that, because the prosecutor stated his reasons for striking the prospective juror, the issue whether defendant had made a *prima facie* showing of discrimination was moot. Defendant contends that, because the *prima facie* issue was moot, the trial court was required to proceed to steps two and three of the *Batson* process and to make appropriate findings. Under the circumstances here, we disagree.

■ If the prosecutor offers a race-neutral explanation and the trial court rules on the question of intentional discrimination, the preliminary question whether the defendant had made out a *prima facie* showing is moot. *People v. Davis,* 935 P.2d 79 (Colo.App.1996).

Here, the prosecutor offered his reasons for excluding the prospective juror before the trial court had an opportunity to rule on the threshold determination whether defendant had made out a *prima facie* case. The prosecutor described to the court the prospective juror's behavior that indicated a lack of interest and explained that, in his view, the individual felt inconvenienced by having been called. Moreover, the prosecutor added, he preferred married, educated jurors. The trial court then considered the prosecutor's explanation, however, only to determine the *prima facie* issue and did not make findings on the ultimate question of purposeful racial discrimination. Thus, the issue of whether defendant had made out a *prima facie* showing is not moot. *People v. Valdez,* 946 P.2d 491 (Colo.App.1997).

■ Accordingly, we next address defendant's argument that the trial court erred in determining that he had failed to establish a *prima facie* case. The standard of review of this issue is abuse of discretion, and generally, we should defer to the trial court's decision. *People v. Valdez, supra.*

Here, the record indicates that the prosecutor used five of six available peremptory challenges. Two of those challenges were to individuals who were African–American. Defendant argued to the trial court that, under *Batson* and its progeny, a *prima facie* case may be established simply by showing a statistical disproportion of peremptory challenges used against a class of jurors. A *prima facie* case was demonstrated here, he claimed, because the prosecutor used 40 percent of his challenges on African–American individuals. He argued, in addition, that the content of questions asked of other non-African-American jurors by the prosecutor during voir dire who were not challenged also indicated a racially discriminatory intent. The trial court rejected defendant's assertions, and we find no basis to disagree.

■ Relevant factors in determining whether there is an inference of intentional racial discrimination include the disproportionate impact of peremptory strikes, a pattern of strikes against jurors of a particular race, and the prosecutor's questions and statements during voir dire. *Batson v. Kentucky, supra; United States v. Esparsen,* 930 F.2d 1461 (10th Cir.1991), *cert. denied,* 502 U.S. 1036, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992).

■ Under *Batson,* a systematic pattern of exclusions is neither necessary nor sufficient for making out a *prima facie* showing. However, a pattern of exclusions may be part of the totality of the circumstances used to determine whether a *prima facie* showing was made. There is, no magic number of challenged jurors that will result in a *prima facie* case. *People v. Valdez, supra* (statistics are no substitute for the trial court's assessment of the government's conduct at trial).

Here, commenting that the statistical pool was "obviously extremely limited," the trial court discounted the significance of the statistical data presented. The court noted,

however, that although the prosecutor had challenged one of the two African–American men on the panel, another one remained on the jury. In finding no *prima facie* case regarding the exclusion of the juror, the court confirmed that the prospective juror had not been attentive.

Defendant contends however, that, in addition to the statistical data, although the prosecutor claimed that he preferred jurors who were attentive and responsive during voir dire, and also who were married and had some education, he did not question most of the prospective jurors about these issues, nor did he excuse certain non-African-American jurors who did not meet these criteria.

■ However, "*Batson* places special confidence in the trial court's ability to distinguish the legitimate racially neutral explanation from the sham reason." *People v. Marion, supra,* 941 P.2d at 291. Thus, great deference is given to the trial court's findings of non-discrimination based largely on its ability to assess the demeanor and credibility of the prosecutor. *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

Here, the trial court witnessed the voir dire and, by its own observations, found no racial motive in the prosecutor's behavior. In its explanation of its ruling, the court noted:

[If] you start looking at the objective categories of individuals who are either left on or kicked off, you leave off the subjective interactions. And I don't think a case goes by where I don't perceive certain subjective human-to-human interactions between the jurors and all counsel such that I might make a note to myself [that] that person's going to get excused because there was simply not a good connection there or that person is going to get excused by the other side because there was a particularly good connection made. So we're dealing in an area here of credibility, subtlety, subjectivity, [as well as] objective data.

The court then stated that "I saw this one coming," and concluded that the prosecutor's decision here "has my confidence."

The trial court was in the best position to observe the interactions and to evaluate de-

meanor and credibility. Thus, we defer to its assessment as to whether the prosecutor's conduct demonstrated discriminatory intent. *See People v. Valdez, supra.*

Hence, on this record, we conclude that there was no error in the court's determination that defendant had failed to make a *prima facie* showing of discrimination.

## VIII.

Defendant's next contention is that the trial court improperly denied him the ability to make an objection because it refused to permit him to approach the bench during opening statements to move for a mistrial. The record, however, contradicts this contention. The court permitted defendant to make a record immediately after opening statements had concluded. *See Jones v. District Court,* 780 P.2d 526 (Colo.1989) (trial court has the responsibility to conduct trial in orderly manner).

## IX.

Finally, defendant contends that the reference to the police "gang bureau" in the testimony of a prosecution witness violated his right to due process and to a fair and impartial jury. Thus, he asserts, the trial court erred by denying his motion for a mistrial. We disagree.

The court had granted defendant's motion *in limine* to exclude all references by the prosecution's police officer witnesses that they were members of the police "gang unit." However, the prosecutor did not inform police witnesses of the ruling, and, during his testimony, one of the officers stated in response to a question concerning his duties that he was "assigned to the gang bureau of the Denver Police Department." Defendant immediately objected and moved for a mistrial.

A trial court has broad discretion in deciding whether to grant or deny a mistrial and its decision will not be disturbed on appeal absent a gross abuse of that discretion and prejudice to the defendant. A mistrial is a drastic remedy and is only warranted where the prejudice to the defendant cannot be remedied by other means. *People v. Abbott,* 690 P.2d 1263 (Colo.1984).

Also, a trial court is in the best position to gauge the effect of irregularities on juries. *See People v. Roy,* 723 P.2d 1345 (Colo.1986). Appellate courts must defer to a trial court's assessment of courtroom occurrences. *People v. Gladney,* 194 Colo. 68, 570 P.2d 231 (1977), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 776, 54 L.Ed.2d 787 (1978).

Here, after a thorough discussion with counsel of the sequence of events, the trial court accepted the prosecutor's explanation that his failure to advise his witnesses was an oversight. On the record here, we find no abuse of discretion in the court's determination. *See People v. Salazar,* 920 P.2d 893 (Colo.App.1996) (witness' reference to defendant's recent release from prison was not of a magnitude to require a mistrial where prosecutor did not deliberately attempt to elicit evidence).

The judgments and sentence are affirmed.

NEY and ROTHENBERG, JJ., concur.