The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Shawn L. RIVERA, Defendant–Appellant.

No. 96CA0868.

Colorado Court of Appeals,
Div. V.

Nov. 28, 1997.

As Modified on Denial of Rehearing
April 9, 1998.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Laurie A. Booras, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge KAPELKE.

Defendant, Shawn L. Rivera, appeals from a judgment of conviction entered on a jury verdict finding him guilty of first degree arson, criminal mischief, and second degree criminal trespass. He challenges the transfer of his case from juvenile court to district court; the legality, constitutionality, and length of his sentence; the amount of restitution fixed by the court; and the denial of his motion for a mistrial based on allegedly improper remarks made by the prosecution during closing argument. We affirm the judgment of conviction and the sentences imposed, except as to the sentence on the misdemeanor criminal trespass count. We vacate the sentence for that offense and remand for resentencing as to that count.

The prosecution initially filed a juvenile delinquency petition premised on defendant's having committed acts that would constitute first degree arson, second degree burglary, and criminal mischief in connection with a fire that destroyed an abandoned school building.

The prosecution later moved to transfer the case to district court pursuant to the statutory provision now codified as § 19–2–518, C.R.S.1997. Following a hearing, the juvenile court transferred jurisdiction to the district court.

A lengthy jury trial resulted in the convictions here at issue. Defendant was sentenced to twelve years in the Department of Corrections (DOC) on each of the felony convictions, and one year in county jail on the misdemeanor criminal trespass conviction, with all sentences to run concurrently.

The court also fixed the amount of restitution to be paid by defendant at $800,675.

## I.

Defendant contends that the juvenile court abused its discretion and violated his due process rights by transferring his case to the district court. Specifically, defendant argues that the transfer was improper because the juvenile court: (1) erred in concluding that the factors supporting transfer outweighed those supporting retention of defendant's case in the juvenile system; (2) erroneously assumed the maximum sentence for a juvenile was two years under the Children's Code; (3) erroneously considered evidence from a detention hearing at the transfer hearing; and (4) erred in holding, based on insufficient evidence, that defendant was not amenable to rehabilitation. We disagree.

### A.

■ Pursuant to § 19–2–518(4)(b), C.R.S. 1997, the juvenile court must consider several enumerated factors in determining whether the interests of the juvenile or of the community would be better served by the court's waiving its jurisdiction and transferring the case to district court. The weight to be given each factor is discretionary with the court, and an insufficiency of evidence pertaining to any one or more of the factors is not determinative. Sections 19–2–518(4)(c) and 19–2–518(4)(d), C.R.S.1997; *see also People in Interest of A.D.G.*, 895 P.2d 1067, 1070 (Colo.App.1994).

Here, the court found that the following factors weighed in favor of transfer: (1) the offenses were committed in a premeditated and willful manner; (2) defendant was more mature than his chronological age; (3) the interest of the community in the imposition of punishment commensurate with the offenses supported transfer because the school building was important to the community; and (4) in light of the historic nature of the building and the risk to the lives of firefighters who extinguished the blaze, the impact of the offense on the victim was quite serious.

The court further found that the seriousness of the offenses, defendant's record and previous history, and the potential for rehabilitation through the use of juvenile facilities were essentially neutral factors since certain aspects of each weighed in favor of, while other aspects weighed against, transfer.

The only factor weighing against transfer, the court determined, was that the alleged offenses were against property rather than a person.

The juvenile court devoted attention to each of the applicable factors and made explicit findings as to the weight to be accorded each. Such findings have record support. Accordingly, we find no abuse of discretion.

### B.

Defendant next contends that the transfer was improper because the juvenile court erroneously assumed the maximum sentence available under the Children's Code was two years. Again, we disagree.

As the juvenile court correctly noted, although the Department of Human Services may petition a committing court to extend a sentence for an additional two-year period, the maximum sentence *the juvenile court* can impose under the Children's Code in the first instance is two years. Sections 19–2–909(1)(a), 19–2–921(3)(c), and 19–2–921(4), C.R.S.1997. Therefore, there is no error here.

### C.

■ Defendant asserts that the juvenile court erred in considering evidence presented at the detention hearing at which he was not represented by counsel. We reject this contention. At the detention hearing defendant was advised of his right to representation and knowingly waived that right. Accordingly, his lack of counsel at that hearing provides no basis for exclusion of such evidence at the transfer hearing.

### D.

■ Finally, defendant argues that since he was amenable to rehabilitation, the juvenile court should not have transferred jurisdiction. We disagree.

In support of his contention, defendant relies on several Oklahoma cases. We find those decisions inapposite. They were based on a statute which allowed a juvenile to be tried as an adult only if there were substantial evidence that the child was not amenable to rehabilitation. *See J.J.W. v. State,* 842 P.2d 349 (Okl.Crim.App.1992). In contrast, the test under § 19–2–518(3)(b), C.R.S.1997, is whether the interests of the juvenile or the community would be better served by the juvenile court's waiving its jurisdiction. The juvenile's amenability to rehabilitation is but one of several factors to be considered by the court in making that determination.

Also, as the juvenile court found here, with supporting evidence, defendant had already been given opportunities for rehabilitation which had proven unsuccessful.

Under these circumstances, the court did not err by transferring jurisdiction to the district court.

## II.

■ Defendant next contends that the district court lacked the authority to sentence him to the DOC. We disagree.

In support of his argument, defendant compares a section of the transfer statute, § 19–2–518, with a portion of the direct filing statute, § 19–2–517, C.R.S.1997.

Section 19–2–518(1)(d)(I), C.R.S.1997, states, in pertinent part:

Whenever criminal charges are transferred to the district court pursuant to the provisions of this article, the judge of the district court shall have the power to make any disposition of the case that any juvenile court would have or to remand the case to the juvenile court for disposition *at its discretion;* except that a juvenile who is convicted of a class 1 felony, or whose case was transferred to the district court and who is convicted of a crime of violence . . ., or who has been previously adjudicated a mandatory sentence offender, a violent juvenile offender, or an aggravated juvenile offender shall be sentenced pursuant to section 18–1–105, C.R.S. (emphasis added)

In contrast, § 19–2–517(3)(a), C.R.S.1997, provides, in pertinent part:

Whenever criminal charges are filed by information or indictment in the district court pursuant to this section, the district judge shall sentence the juvenile as follows:

(I) As an adult; or

(II) To the youthful offender system. . . .

Defendant argues that because the direct filing statute specifically states that a defendant may be sentenced as an adult, the absence of such wording in the transfer statute precludes such a sentence. He asserts that once a case has been transferred to district court, the court can only sentence a juvenile to the DOC if he or she is convicted of a class one felony or crime of violence, or has been previously adjudicated a mandatory sentence offender, a violent juvenile offender, or an aggravated juvenile offender. Since none of these classifications applies to defendant, he argues, the court had only two sentencing options pursuant to § 19–2–518: (1) to dispose of the case as a juvenile court would have or (2) to remand the case to the juvenile court. We reject defendant's interpretation of the transfer statute.

■ The primary task in construing statutes is to give effect to the intent of the General Assembly. *Lambdin v. District Court,* 903 P.2d 1126 (Colo.1995). In determining legislative intent, courts must consider the underlying purpose of the statutory enactments. *Thurman v. Tafoya,* 895 P.2d 1050 (Colo.1995).

■ The effect of a transfer order is to convert the case to an adult proceeding, and the provisions of the Children's Code do not apply once the district court has acquired jurisdiction as a result of the transfer. As stated in *People v. Armand,* 873 P.2d 7, 9 (Colo.App.1993), once the case has been transferred, "the juvenile court has no further jurisdiction unless the district court, in its discretion, chooses to remand the case to the juvenile court for disposition." *See also Rocha v. People,* 713 P.2d 350 (Colo.1986); § 19–2–518(1)(d)(I).

Contrary to defendant's contentions, the absence of language in the transfer statute as to the district court's ability to sentence a defendant as an adult after a case has been transferred to its jurisdiction is not determinative of the issue.

Instead, once a case has been transferred to the district court, that court may sentence a defendant as an adult or, in its discretion, sentence him or her as a juvenile or remand the case to juvenile court unless that individual falls within one of the classifications in § 19–2–518(1)(d)(I) of juveniles who *must* be sentenced as adults.

This interpretation is consistent with the language of the transfer statute and satisfies its purpose of converting the case to an adult proceeding. *See People v. Armand, supra.*

■ The language in the transfer statute identifying those offenders who must be sentenced as adults—a juvenile convicted of a class one felony or crime of violence, or who has been previously adjudicated a mandatory sentence offender, violent juvenile offender, or aggravated juvenile offender—does not compel or support a conclusion that those individuals are the only ones who may be sentenced as adults.

We therefore reject defendant's contention that the district court exceeded its authority by sentencing him as an adult.

### III.

■ Defendant contends that if the transfer statute is interpreted to allow the district court to sentence him as an adult, the statute violates his equal protection rights. Specifically, he argues that, unlike the direct filing statute, § 19–2–517, the transfer statute does not permit the court to sentence him to the youthful offender system. We find no equal protection violation.

■ Equal protection of the laws guarantees that similarly situated persons will receive like treatment. *People v. Hughes,* 946 P.2d 509 (Colo.App.1997).

■ Since there is no fundamental right or suspect or gender-based classification involved here, the applicable standard for equal protection analysis is whether the clas-sification is reasonable and bears a rational relationship to legitimate state objectives. *People v. Hughes, supra.*

Pursuant to the direct filing statute, a juvenile may either be sentenced as an adult or to the youthful offender system. Section 19–2–517(3)(a). As previously discussed, under the transfer statute a juvenile may be sentenced as an adult or as a juvenile. Section 19–2–518(1)(d)(I). Defendant posits that a sentence to the youthful offender system is a more lenient punishment than a sentence to the DOC, yet the youthful offender system is not a sentencing option for the district court in a transfer case. He argues that this sentencing scheme violates his rights to equal protection because the direct filing statute is reserved for more serious offenders, while the transfer statute applies to less serious offenders.

Though the juvenile whose case has been transferred to district court may not be sentenced to the youth offender system, he or she may be sentenced as a *juvenile* under the Children's Code. This is a *less* restrictive option than a sentence to the youth offender system.

Further, in *People v. Hughes, supra,* 946 P.2d at 514, a division of this court rejected a similar equal protection claim based on the direct filing statute and held that:

> It is not a violation of equal protection for the General Assembly to provide for the sentencing of a juvenile convicted of a crime of violence to the youthful offender program while providing that a juvenile not convicted of a crime of violence be sentenced as an adult.

We find the reasoning in *Hughes* persuasive. Since there is a rational basis for sentencing a less serious offender to the DOC, and since defendant could have been sentenced as a juvenile, we find no equal protection violation here.

### IV.

Defendant next contends that his constitutional rights were violated as a result of misconduct by the prosecutor in closing argument. Specifically, defendant argues that

the prosecutor improperly expressed his personal opinion as to the credibility of a defense expert and also improperly commented on defendant's right to remain silent. We find no basis for reversal.

Following each of the challenged comments by the prosecutor, defendant made contemporaneous objections which were sustained. The court then instructed the jury to disregard the remarks. Defendant's motion for a mistrial based on the comments was denied.

■ A trial court has broad discretion to grant or deny a mistrial. Absent a gross abuse of that discretion and prejudice to the defendant, an appellate court will not disturb the trial court's decision. *People v. Rosa*, 928 P.2d 1365 (Colo.App.1996).

### A.

■ Defendant first argues that he was deprived of a fair trial as a result of the prosecutors improperly expressing his personal opinion concerning the credibility of a defense expert. We disagree.

During rebuttal closing argument, the prosecutor stated:

Now let's talk about [the defense expert]. Let's talk about this explosion. What you have there in [his] testimony is an eager beaver. He wants to work this fire. He called C.B.I. He said, can I work the fire? It would be a learning experience. He admitted that. Then he called the defense.

Now there's nothing wrong with that. This is—that's the progression of his career. And that's what he wants to do. But you don't come into court with myths, magic—

As noted, defendant's contemporaneous objection was sustained, and the trial court instructed the jury to disregard the characterizations of the witness' presentation.

■ A prosecutor may properly comment on a witness' credibility. *People v. Dunton*, 881 P.2d 390 (Colo.App.1994). However, it is improper for a prosecutor to state his or her personal opinion as to the credibility of a witness. *See People v. Smith*, 685 P.2d 786 (Colo.App.1984).

It is questionable whether the prosecutor's comment here actually was a voicing of his personal opinion as to the credibility of the defense expert. In any event, however, because defendant's objection was promptly sustained and because the jury was instructed to disregard this isolated brief comment, we find no basis for reversal. *See People v. Huggins*, 825 P.2d 1024 (Colo.App.1991); *see also People v. Rosa, supra.*

### B.

■ Defendant next argues that the prosecutor improperly commented on his right to remain silent. Although we agree that the prosecutor's remark was improper, we find no basis for reversal under the circumstances here.

In closing argument, the prosecutor stated:

Now, we glossed over Ed Dickson because he wants you to gloss over a confession. Confession is good for the [soul]. People tell about things they do. People tell about things they do because they want to get it off their chest. He [defendant] told two people. He didn't tell the police. That's true. I have to agree. He didn't want to get into trouble.

The trial court sustained defendant's objection and instructed the jury to disregard the comment.

■ Not every reference to a defendant's silence requires reversal. *People v. Key*, 185 Colo. 72, 522 P.2d 719 (1974); *People v. Reali*, 895 P.2d 161 (Colo.App.1994). The determining factors are: (1) whether the improper remarks were used by the prosecution as a means of creating an inference of guilt, and (2) whether the prosecution argued that defendant's silence constituted an implied admission of guilt. *People v. Rodgers*, 756 P.2d 980 (Colo.1988); *People v. Cornelison*, 44 Colo.App. 283, 616 P.2d 173 (1980).

■ Moreover, a brief remark, even if improper, does not necessarily constitute reversible error if it is followed by an appropriate curative instruction to the jury. *See People v. Rosa, supra,* (reversal not required

where investigator made one brief remark about defendant's silence that was followed by trial court curative admonishment); *see also People v. Herr,* 868 P.2d 1121 (Colo.App. 1993) (no plain error where improper comments were isolated and were made during a very lengthy summation). Such is the case here.

### V.

Defendant next urges that the district court abused its discretion by imposing the maximum sentence in the presumptive range (twelve years) for the felony convictions, and by imposing a twelve-month sentence for the criminal trespass conviction. We find no abuse of discretion as to the felony convictions, but agree that the sentence for the criminal trespass conviction is improper.

■ A trial court's sentencing decision will not be reversed absent a clear abuse of discretion. *People v. Vigil,* 718 P.2d 496, 507 (Colo.1986). An abuse of discretion occurs only when the decision is manifestly arbitrary, unreasonable, or unfair. *People v. Milton,* 732 P.2d 1199 (Colo.1987).

When sentencing a defendant, the trial court must consider punishment, deterrence, fairness, and rehabilitation. Section 18–1–102.5, C.R.S.1997.

■ Here, the district court carefully considered all the applicable factors and sentencing options and made explicit findings to support its decision. The court noted some aggravating factors, such as the loss of the community's school building, which had symbolic and historic value, as well as the endangerment of the lives of the firefighters. In addition, the court noted that, although defendant was a juvenile at the time the crime was committed, he was on probation for prior offenses and had received previous opportunities for rehabilitation which had proven unsuccessful.

Since the court carefully considered the available options and applicable factors before sentencing defendant, we find no abuse of discretion as to the felony convictions. *People v. Vigil, supra.*

■ However, the sentence imposed for the criminal trespass conviction, a class three misdemeanor, exceeded the maximum sentence, which is six months. Section 18–1–106(1), C.R.S.1997. Therefore, a remand for resentencing is required as to the criminal trespass count.

### VI.

Next, defendant contends that the district court abused its discretion in fixing the amount of restitution. Specifically, defendant asserts that the court should not have fixed the amount of restitution at $800,675 for the following reasons: 1) the court failed to consider whether a large amount of restitution would cause serious hardship or injustice to defendant; 2) the school building was in a state of deterioration; 3) the direct economic loss to the school district was minimal because its insurance company reimbursed it for much of the cleanup costs; and 4) defendant has no ability to pay such a large amount of restitution. We perceive no basis for reversal.

The estimated actual value of the school building destroyed by the fire was $2,900,000. The actual cost of demolition and removal of debris was $800,675. The school district was reimbursed $761,595 by its insurance company.

■ A trial court's decision fixing the amount of restitution will not be disturbed if it is supported by the record. *People v. Stewart,* 926 P.2d 105 (Colo.App.1996).

Since defendant was not sentenced to probation, the restitution provisions of § 16–11–204.5(1), C.R.S.1997, do not apply. *People v. Schmidt,* 700 P.2d 925 (Colo.App.1985). However, the trial court was authorized to fix the amount of restitution in this case pursuant to § 17–2–201(5)(c)(I) and § 16–11–102(4), C.R.S.1997. *People v. Johnson,* 780 P.2d 504 (Colo.1989)(court's duty to fix amount of restitution not limited to sentences of probation, but applies equally to sentences of imprisonment); *see also People v. Powell,* 748 P.2d 1355 (Colo.App.1987)(when sentencing defendant to incarceration, court has authority to fix amount of restitution for later consideration by parole board).

## A.

■ First, defendant asserts that the court failed to consider, as required by § 19-2-918(1), C.R.S.1997, of the Children's Code, whether a large amount of restitution would cause him serious hardship or injustice. However, once the case was transferred to district court, the Children's Code no longer governed the proceeding. *See People v. Armand, supra.* Therefore, the court was not required to consider that provision in setting the amount of restitution.

## B.

■ Second, defendant argues that since the school building was in a state of deterioration at the time of the fire, the amount of restitution was excessive. Because the restitution amount fixed by the court was not based on the value of the building, but rather on the actual cost of demolition and debris removal as established by evidence in the record, we reject this contention.

## C.

■ Third, defendant contends that the amount of restitution should be reduced because the school district was reimbursed by its insurance company for most of its costs. We disagree.

In 1985, the General Assembly revised the language of the statute governing restitution imposed as a condition of probation to clarify that "victim" includes those who have suffered losses because of a contractual relation with the party directly aggrieved by the crime. Thus, in effect, the General Assembly has legislatively overruled the previous interpretations of that statute in *People v. Deadmond,* 683 P.2d 763 (Colo.1984) and *People v. King,* 648 P.2d 173 (Colo.App.1982).

As our supreme court pointed out in *People v. Smith,* 754 P.2d 1168 (Colo.1988), by its 1985 amendments, the General Assembly evinced an unmistakable intent to include within the definition of "victim" an insurer who reimburses the immediate victim for his losses.

In 1996, the General Assembly also amended § 17-2-201(5)(c)(I), C.R.S.1997, the statute governing the parole board's imposition of restitution as a condition of parole, to clarify that the term "victim" includes insurers and other parties who have suffered a loss because of a contractual relationship with the immediate victim. The apparent purpose of that amendment was also to clarify that losses of insurers and other such contracting parties can properly form the basis of restitution orders.

Accordingly, we find no error in the court's considering the loss of the school district's insurer in determining the amount of restitution here.

## D.

■ Finally, defendant argues that the district court erred by failing to take into account his inability to pay $800,675 in restitution. Again, we perceive no error.

As previously noted, the statutory provision which formerly required the court to consider the defendant's ability to pay restitution does not directly apply because defendant was not sentenced to probation. *See* Colo. Sess. Laws 1996, ch. 288, § 16-11-204.5(1) at 1778.

We do note that in *People v. Johnson, supra,* our supreme court indicated that the sentencing court, when fixing the amount of restitution in connection with a sentence to incarceration, should consider a defendant's ability to pay "where appropriate." However, in light of the absence of any statutory requirement for such consideration, we view the court's comment as merely precatory. Thus, we do not read it as a mandate in this regard. Accordingly, we find no error here.

The judgment is affirmed, and the sentences are affirmed, except as to the sentence on the misdemeanor trespass count. That sentence is vacated, and the cause is remanded for resentencing on that count.

RULAND and CASEBOLT, JJ., concur.